Travis J. Morrissey Hurst Law Firm 213 Woodbine Hot Springs, AR 71901
Dear Mr. Morrissey:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted a similar measure that I rejected due to ambiguities in the text of your proposed amendment. See
Opinion No. 2001-378. You have since made additional changes to your measure and submitted a popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AMENDMENT TO PROVIDE FOR THE ELECTION OF THE ARKANSAS GAME FISH COMMISSIONERS
 Ballot Title PROPOSING AN AMENDMENT TO AMENDMENT NO. 35 TO THE CONSTITUTION OF THE STATE OF ARKANSAS TO PROVIDE FOR THE ELECTION OF MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION BY POPULAR VOTE; TO PROVIDE FOR THE APPOINTMENT OF THE DIRECTOR OF THE ARKANSAS STATE GAME AND FISH COMMISSION BY THE GOVERNOR; TO PROVIDE FOR TRANSITION TO THE NEW FORM OF THE ARKANSAS STATE GAME AND FISH COMMISSION; AND FOR OTHER PURPOSES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 1 of your proposed amendment amends Section 2 of existing Amendment 35. Your proposal sets the number of Game and Fish Commissioners at nine, eight of whom are popularly elected (two from each congressional district) and one member who is the head of the "Zoology Department" at the University of Arkansas. Three ambiguities arise from this action. First, your Section 2, setting the number of Commissioners at nine, conflicts with existing Section 1 of Amendment 35, which you have left unamended. That Section sets the number of Commissioners at eight, including the "Zoology Department" head who, under existing Section 1, serves without voting power. Your proposed amendment would apparently invest this last-mentioned Commissioner with voting power. Second, as I indicated in my response to your first submission (see Opinion 2001-378) the" Head of the Zoology Department" may now be an ambiguous reference. As stated in Op. Att'y. Gen. 90-306
"there is no longer a head of the `Department of Zoology' at the University of Arkansas. On October 15, 1990, the Zoology Department at the Fayetteville campus was merged into the newly-created Department of Biological Sciences headed by a single chair. Zoology now exists as one of three divisions within that department." As circumstances existed in 1990, therefore, reference to the "Head of the Zoology Department" would be misleading and ambiguous. Inquiry should be made for the current designation so that any new reference to this Department in your proposal would not be ambiguous. Third, as I noted in my response to your first submission, your proposal requires two Commissioners to be elected from each congressional district existing at the time of the election. This would allow fluctuation in the number of Commissioners with any future changes in the number of congressional districts. Both your proposed Section 2, however, and existing Section 1 of Amendment 35, which you leave unamended, set a finite (albeit different) number of Commissioners. Am ambiguity exists, therefore, as I stated in my previous response to you, as to the total possible number of Commissioners if the number of congressional districts in Arkansas changes. See e.g., White v. Hankins, 276 Ark. 562, 637 S.W.2d 603
(1982).
 2. Section 1 (b) of your proposed amendment (again amending Section 2 of Amendment 35) requires Commissioners to be elected on a "nonpartisan basis" and requires the General Assembly to enact laws establishing procedures for the nonpartisan elections. Despite this nonpartisan designation, your proposed amendment states that: "[t]he filing fees required of candidates running for Arkansas State Game and Fish Commissioners shall be prescribed by the respective political parties in this state and those governing independent candidates." Several ambiguities arise from this language. First, I am uncertain how an election can be "nonpartisan" when the respective political parties set the filing fees. Second, the reference to filing fees of independent candidates is ambiguous. Under current law, most independent candidates collect signatures on petitions to put forth their candidacies and do not pay "filing fees." See e.g., A.C.A. § 7-7-103 (Supp. 2001). Finally, an ambiguity exists as to what the distinction would be between a "nonpartisan" candidate and an independent one, i.e. why is it necessary to have "independent" candidates if the election of all Commissioners is on a "nonpartisan" basis?
 3. Section 1 (c) of your proposed amendment staggers the initial terms of Commissioners, with some serving two-year terms and some four year terms (by a process which I interpret as being left to the General Assembly's discretion). Subsection (c) also provides that "[u]pon expiration of the initial terms of the commissioners, all commissioners shall serve for a term of four (4) years and until their successors have been duly elected and qualified." Subsection (d) of this Section states in relevant part that: "[n]o person shall serve as a member of the Arkansas State Game and Fish Commission for more than two (2) four-year terms. Commissioners initially elected to serve a two-year term or appointed to fill a vacancy are eligible to serve two (2) four-year terms." Despite this two term limitation, Section 2 of your proposed amendment, which amends Section 3 of Amendment 35, states that: "No Commissioner can serve more than one term and none can succeed himself." This language flatly contradicts the language above.
 4. As I noted to you in my response to your previous submission, Section 2 of your amendment, amending Section 3 of Amendment 35, also provides that "[t]he General Assembly shall by law determine the amount and method of payment of compensation, if any, and expenses of the members of the Arkansas State Game and Fish Commission. . . ." Your proposed amendment, however, leaves unamended Section 4 of existing Amendment 35, which provides that Commissioners shall serve without compensation other than actual expenses. You must remedy this contradiction before I can certify a ballot title for your measure.
 5. Section 4 of your amendment amends Section 6 of Amendment 35 to empower the Governor to appoint a Director of the Arkansas Game and Fish Commission for a term of four years. An ambiguity exists as to the point in time at which this four-year term begins. Your amendment is effective upon adoption but provides for the continuation of service of the Commissioners holding office on the effective date until the new Commissioners can be elected. Proposed Amendment § 6. Your amendment is unclear, however, as to when the newly appointed Director is to begin his or her duties. Additionally, you leave unamended Section 7 of Amendment 35, which provides for the Commission to elect an" Executive Secretary." This unamended Section creates an ambiguity in relation to the duties of the" Director" created by your new provision as opposed to the "Executive Secretary." A further ambiguity arises in this regard from your new Section 9, which authorizes the General Assembly to empower the Commission to elect a "Director, Vice Director and such other officers from its membership . . . as it deems necessary." Although I assume the "Director" elected from among the membership of the Commissioners will be a distinct person from the "Director" appointed by the Governor, the use of the word "Director" for both positions is confusing and ambiguous.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh